IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                          )<br>)<br>BRYAN ALAN SPARKS,                        )<br>AUTUMN GAIL LUNA,                           )<br>)<br>Defendant.                        ) | Case: 1:21-mj-00496<br>Assigned To : Meriweather, Robin M.<br>Assign. Date : 6/24/2021<br>Description: Complaint w/ Arrest Warrant |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Brandt Bartman, an Officer with the Amtrak Police Department being duly sworn, depose and state as follows:

1.     I have been an Officer with the Amtrak Police Department ("APD") for the past nine (9) years , and have been stationed at Washington, D.C., Union Station office for the past four (4) years.  I am currently assigned to the K9 Unit. In that role, I conduct narcotics investigations to include conducting K9 sweeps of Amtrak Property, stations, onboard trains, passengers, employees, baggage, and vehicles. As a narcotics detection K9 handler, my K9 "Koda" and I have received over 2000 hours of training, in addition we complete 240 minutes of narcotics detection training per month, and are annually certified by the North American Police Working Dog Association (NAPWDA). My narcotics detection K9 "Koda" and I have aided in over 600 narcotics seizures.  In addition to my K9 training, I have received over 500 hours of training and experience in interviewing and interrogation techniques, arrest procedures, search and seizure, narcotics recognition, narcotics interdiction, and various other crimes, since joining the APD.

2.     Through my training and experience, as described above, I have become familiar with the provisions of the controlled substance laws administered under Title 21 of the United

1

States Code. I have personally conducted and participated in arrests resulting in the conviction of numerous individuals responsible for violations of the District of Columbia Code and United States Code including, but not limited to, narcotics offenses.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and arrest warrant. It does not set forth all my knowledge, or the knowledge of others, about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), (b)(1)(B)(viii), (b)(1)(C) and 18 U.S.C. § 2 have been committed by **BRYAN ALAN SPARKS ("SPARKS")** and **AUTUMN GAIL LUNA ("LUNA")**.

## PROBABLE CAUSE

5. On June 22, 2021, I was on duty at Union Station, located at 50 Massachusetts NE in the District of Columbia, patrolling the station with my narcotics detection K9 "Koda."

6. At approximately 2:40pm, "Koda" and I, along with Officer Fales, conducted a check of track 25, during the arrival of Amtrak Train 91(22). While on the platform, I observed a white male, later identified as **SPARKS,** and white female, later identified as **LUNA**, walking on the platform as though they intended to board the train. I stopped **SPARKS** and **LUNA**, and asked to see their tickets, because the train had not yet begun boarding.

7. **SPARKS** produced an Amtrak ticket bearing reservation number 3D13AE, displaying passenger names of "Autumn Luna" and "Bryan Sparks." I then advised **SPARKS**

and **LUNA** to place their bags onto the ground so that "Koda" could scan them. Once the bags were on the ground, I presented each bag to "Koda" individually.

8. I first presented **LUNA's** purse, and "Koda" showed an immediate change in her behavior and started to actively sniff the main compartment of the purse, which was open. "Koda" then produced a final response by sitting, indicating that she had discovered narcotics. When I advised **LUNA** that my K9 had alerted to the presence of narcotics in her purse, she spontaneously uttered "all that's in there is a pipe and 1 gram of coke." I then instructed **LUNA** to turn around and place her hands behind her back because she was being detained. **LUNA** became agitated and began to resist, but I was able to handcuff her without further incident.

9. I then presented **SPARKS'** jacket, and "Koda" showed an immediate change in her behavior and started to actively sniff the jacket pockets. "Koda" then produced a final response by sitting, indicating that she had discovered narcotics. At that point, Officer Fales handcuffed **SPARKS** without incident.

10. I then notified the National Communications Center ("NCC") and requested additional units for assistance. Officer Espinal and Sergeant Underwood arrived on scene to assist. Officers Fales and Espinal escorted **SPARKS** and **LUNA** to the APD Office for further investigation, and Sergeant Underwood and I transported the bags and jacket. Once at the APD Office, I again notified the NCC and requested that a female U.S. Capitol Police officer respond to the station to search **LUNA** incident to her arrest. Officer Banfield responded to the APD Office and conducted a search of **LUNA's** person. No additional contraband was found during that search.

11.     I then requested that a Metropolitan Police Department ("MPD") officer respond to APD to field test any narcotics recovered from **SPARKS** and **LUNA**. MPD officer Hugee responded to perform the field tests.

<u>Seizure of Controlled Substances from **SPARKS** and **LUNA**</u>

12.     Based on "Koda's" alert, I conducted a probable cause search of **LUNA's** purse and located one (1) balled piece of foil containing white powder substance, which weighed 7.4 grams. This substance field tested positive for cocaine.

13.     Based on "Koda's" alert, I conducted a probable cause search SPARKS' jacket, and located one (1) clear glass smoking device contain white powder substance residue with burnt residue in the right jacket pocket. In the left jacket pocket, I located one (1) balled up white paper towel containing white rock substance. The substance inside the white paper towel field tested positive for cocaine base.

14.     At 3:05pm I read **SPARKS** his Miranda rights. At 3:11pm, I read **LUNA** her Miranda rights. Both **SPARKS** and **LUNA** stated that they understood their rights and agreed to answer questions. I then asked **SPARKS** which of the bags belonged to him. **SPARKS** indicated that a black duffel bag and a black laptop bag were his. I asked **SPARKS** for consent to search the contents of those two bags, and he consented to the search.

15.     Inside **SPARKS'** black laptop computer bag, I located two (2) $1.00 bills, both of which were rolled up, and both of which contained an unknown burnt residue inside. I also located multiple pieces of Aluminum foil with burnt residue.

16.     Inside **SPARKS'** black duffel bag, I located two (2) brown paper bags containing coffee beans from "Middle Fork Roasters." I opened the first bag of coffee beans and observed a clear plastic zip bag inside. I removed the plastic bag and noted that it

contained ground pepper and another plastic bag. The second plastic bag contained a white rocklike substance which field tested positive for cocaine base. I opened the second bag of coffee beans and observed another clear plastic bag inside. I removed the plastic bag and noted that it also contained ground pepper as well as one (1) clear plastic heat-sealed bag and two (2) clear plastic bags. The heat-sealed bag contained a crystalline rock substance which field tested positive for methamphetamine. Both of the plastic bags contained a brown powder which field tested positive for Opium base.

17. Even though **SPARKS** had previously informed me that both the black laptop computer bag and the black duffel bag were his, upon discovery of items described above, **LUNA** insisted that all of the drugs were hers.

18. The total weight of the narcotics seized, as identified by field tests, are as follows: Cocaine Base (49.1 grams); Methamphetamine (18.8 grams); Opium/Heroin (44.7 grams); Cocaine (7.4 grams).

Seizure of Items Related to Fraud and Identity Theft from **SPARKS** and **LUNA**

19. In addition to controlled substances, I discovered the following items in plain view while I was searching **LUNA's** purse based on "Koda's" alert:

   a. Twenty (20) credit cards, including cards that were issued to **LUNA** and cards that were issued to other persons.
   b. Twenty (20) cellular telephones, including both iPhones and "Android" smartphones.
   c. United States mail addressed to persons other than **SPARKS** or **LUNA.**
   d. Various documents addressed to or belonging to persons other than **SPARKS** or **LUNA**.
   e. Two (2) motor vehicle titles belonging to different people
   f. Two (2) laptop computers.

Based on my training and experience, I know that these items are used to assume the identity of another for the purposes of obtaining money by fraudulent means.

20. In addition to controlled substances, I discovered the following items in plain view while I was searching **SPARKS'** bags with his consent:

    a. One (1) Fraudulent Texas Driver's License depicting **SPARKS'** picture and another individual's name and address.
    b. Five (5) credit cards issued to persons other than **SPARKS** or **LUNA.**
    c. Two (2) cellular telephone SIM cards.
    d. One (1) traffic citation issued to a person other than **SPARKS** or **LUNA.**
    e. Twelve (12) checks issued as payable to persons other than **SPARKS** or **LUNA.**
    f. Four (4) check books containing checks drawn on bank accounts issued to persons other than **SPARKS** or **LUNA**.
    g. Four (4) credit card readers.
    h. Three (3) laptop computers.
    i. One (1) black light.
    j. One (1) card printer.
    k. One (1) ink cartridge for use in a card printer.
    l. Fifteen (15) blank plastic cards.
    m. One (1) hobby craft cutting board
    n. More than one hundred (100) photocopied papers containing the Personal Identifying Information (PII) of persons other than **SPARKS** or **LUNA.**
    o. Fifteen (15) cellular telephones including both iPhones and "Android" smartphones.
    p. Multiple "thumb drives" containing unknown electronic data.
    q. Various computer components.
    r. Various test cards with chips.

Based on my training and experience, I know that these items are used to assume the identity of another for the purposes of obtaining money by fraudulent means.

21. Based on the foregoing, your affiant asserts that there is probable cause to conclude that, on or about June 22, 2021, in the District of Columbia, **BRYAN ALAN SPARKS** and **AUTUMN GAIL LUNA** violated 21 U.S.C. §§ 841(a), (b)(1)(B)(iii), (b)(1)(B)(viii), (b)(1)(C), and 18 U.S.C. § 2, which make it a crime to possess with the intent to distribute a mixture and substance containing more than 28 grams of cocaine base, more than 5 grams of methamphetamine, a detectable amount of heroin, and a detectable amount of cocaine.

\#K607

_____
Officer Brandt Bartman
Amtrak Police Department


Subscribed and sworn by telephone pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on June 24, 2021.


_____
HON. ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE